63 325
70 537

THE CITY OF CAMDEN, DEFENDANT IN ERROR, v. THADDEUS P. VARNEY, PLAINTIFF IN ERROR.

Submitted March 27, 1899—Decided June 19, 1899.

1. "An act to secure in this state the certification of marriages, births and deaths and of the vital facts relating thereto, and to provide for the record thereof," approved February 15th, 1888 (*Gen. Stat., p.* 2006), supersedes all previous legislation on the subject included in its title.

2. Money paid for a municipal corporation to one of its officers in excess of his lawful fees may be recovered by the corporation in an action against the officer for money had and received to its use, although the payments were made on the order of its governing body with full knowledge of the facts and without fraud. The defence of voluntary payment is not available in such a case.

On error to the Supreme Court.

For the plaintiff in error, *Frederick A. Rex.*

.For the defendant in error, *Edward G. C. Bleakly.*

The opinion of the court was delivered by

COLLINS, J.   The city of Camden, a municipal corporation, sued to recover alleged overpayments of fees by its treasurer to its clerk.   The defence was first, that the fees were paid upon a lawful exaction, and second, that their payment was voluntary through the order of the city council, with full knowledge of the facts and without fraud on either side. The trial judge directed a verdict in favor of the plaintiff.

It was decided by the unanimous judgment of this court in *Demarest* v. *Inhabitants of New Barbadoes*, 11 *Vroom* 604, that a township committee dealing with a collector of taxes are agents only so far as they act within express provisions of law, and that payments made or sanctioned by them not authorized by legislative enactment are *ultra vires*, outside of their agency, and cannot bind their principals—the people. It was further adjudged that unauthorized payments made by the committee to the collector might be recovered as money wrongfully had and received.   The doctrine of acquiescence and voluntary payment, insisted on there as here, was held to have no place because the payments were not by the township nor with its sanction or approval.   This decision controls in the present case for it is entirely parallel.   The right to any fees resting entirely on statute, the knowledge of the clerk of the limit of the council's authority must be presumed.   We inquire, therefore, into the legality of the exaction.

The fees were demanded and paid for services relating to the vital statistics of the city.   By "An act concerning marriages, births and deaths" (Revision), approved March 27th, 1874 (*Rev.*, p. 631 ; *Gen. Stat.*, p. 2003), the clerk of every city in the state was required to keep a record of marriages, births and deaths, and to send a copy annually to the secretary of state.   For these services the city clerk was entitled to receive from the city treasurer ten cents for the record of each marriage, birth or

death, and five cents for each marriage, birth or death returned
to the secretary of state. By "An act concerning the registry
and returns of marriages, births and deaths," approved April
5th, 1878 (*Pamph. L., p.* 354), these provisions were ex-
pressly repealed and a different system was instituted. The
city clerks were no longer required to keep a record, but by
section 10 of the new act were directed to transmit monthly
to the secretary of state the actual certificates received by
them, and became entitled to receive five cents for each mar-
riage, birth or death returned. Section 12 of the act pro-
vided that the secretary of state should send annually to the
clerks of the Courts of Common Pleas the returns from the
respective counties, which returns the clerks were to arrange
alphabetically and index for three cents for each certificate.
In counties where there were boards of health the clerks of
such boards were to perform that service for the same fees.
By a supplement approved March 12th, 1879 (*Pamph. L., p.*
117), section 10 was amended so as to increase to ten cents
the fees for each marriage, birth or death returned. Section
12 was amended so that the secretary of state, instead of the
county clerks, was to arrange and index the returns for each
county, and was allowed for the necessary clerical service " the
same amount as is now provided to be paid to county clerks
for the same service ;" and to the amended section was added
this clause, viz., " and in case of any county now having a
county board of health, or of any city of over thirty thousand
inhabitants the clerk of said county or of the city board shall
also keep an indexed registry, and shall receive from the
proper authorities of said county or city an amount for each
name so registered equal to that heretofore allowed for such
index and registry." Camden came within the provision last
quoted, which the plaintiff in error claims to be still extant.
It is difficult to ascertain the legislative intent in the enact-
ment. I should be inclined to think that the service was
supposed to be in substitution for that previously performed
by county clerks, and that the fee intended was three cents a
name; but the construction adopted in Camden seems to have

been that the service was that authorized by the repealed act of 1874, and ten cents a name was exacted and paid. Consequently since this supplement of 1879 the city clerk of Camden has received ten cents a name for his "indexed registry" and ten cents for each return to the secretary of state. The whole legislation was very crude, and in 1888 was completely recast. On February 15th of that year (*Pamph. L.* 1888, *p.* 52), there was approved "An act to secure in this state the certification of marriages, births and deaths, and of the vital facts relating thereto, and to provide for the record thereof." This act embraces the whole subject included in its title, and contains a repealer of all acts or parts of acts inconsistent with its provisions. Section 12 reads as follows: "That it shall be the duty of the assessor and clerk of every township, and of the registrar of vital statistics and the clerk of every city, borough, town or other local municipal government in this state, on or before the fifteenth day of each calendar month, to transmit by mail to the state bureau of vital statistics, at Trenton, in an envelope marked 'vital statistics,' all the certificates of marriages, births and deaths received by such officer, and of all 'special returns' of births made during the preceding month; and every such assessor, registrar or clerk, upon receiving a certificate from the medical superintendent of said bureau of the whole number of certificates of marriages, births and deaths returned as aforesaid, shall be entitled to receive from the proper disbursing officer of the township, city, borough, town or other local municipal government in which such assessor, registrar or clerk shall be an officer, the sum of ten cents for each marriage, birth and death so returned, the receipt for which shall be attached to the said certificate of the said medical superintendent, and no payment shall be made unless such certificate be produced; and it shall further be the duty of the registrar of vital statistics or the clerk of every city containing thirty thousand inhabitants or over, provided he has been or shall be so directed by the common council or other governing body thereof, before transmitting said certificates to the state bureau of vital

statistics, to make a complete record of the marriages, births and deaths occurring in such city, which record shall be a transcript of the names and vital facts appearing upon the certificates of marriages, births and deaths delivered to him as hereinbefore directed ; the said record shall be so made up that the marriages, the births and the deaths shall appear in separate and distinct classes, in books of such form as may be approved by the local board of health, and for making such record the said registrar or clerk shall be entitled to receive from the disbursing officer of said city the sum of three cents for each certificate thus recorded, in addition to his other fees and salary."

The section was amended in 1892 (*Pamph. L.*, *p.* 351; *Gen. Stat.*, *p.* 2011), but not with regard to the duties or fees of city clerks.

It is too plain to need argument that this statute superseded that of 1879. Its comprehensive title and clear provisions forbid any other conclusion. Even although the provisions of unrepealed legislation may not be inconsistent with those of a new enactment, still where it is plain that it is the legislative intent to embrace the whole subject, it is well settled that what is not included in the later statute must be held to have been discarded. *Roche* v. *Jersey City*, 11 *Vroom* 257, approved in this court; *Haynes* v. *Cape May*, 23 *Id.* 180; *De Ginther* v. *New Jersey Home*, 29 *Id.* 354.

Notwithstanding this statute, the city clerk of Camden besides receiving his lawful fee of ten cents for each marriage, birth and death returned to the secretary of state, has also continuously received ten cents a name for his so-called "indexed registry." This was entirely unwarranted. If the conditions of the act of 1888 were fulfilled (as to which the case is silent), he was entitled to three cents per name for the record therein authorized, and that much the trial judge allowed him to retain.

The judgment under review recovers only the excess received during the six years preceding the beginning of the action. It must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COL-
LINS, DIXON, GUMMERE, LIPPINCOTT, LUDLOW, VAN
SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDEN-
BURGH. 13.

*For reversal*—None.