69 N.J. Super. 220 (1961)
174 A.2d 100
FRANCIS X. BEIRNE, PLAINTIFF,
v.
THOMAS GANGEMI, INDIVIDUALLY AND AS MAYOR OF THE CITY OF JERSEY CITY, AND LAWRENCE J. CAMISA, INDIVIDUALLY AND AS DIRECTOR OF FINANCE OF THE CITY OF JERSEY CITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 21, 1961.
*222 Mr. Joseph A. Davis, attorney for plaintiff.
Mr. Ezra L. Nolan, attorney for defendants (Mr. T. James Tumulty, appearing).
PINDAR, J.S.C.
The complaint filed herein is in lieu of prerogative writ (in the nature of quo warranto). Plaintiff claims the office of City Collector of the City of Jersey City. He sues Thomas Gangemi, individually and as Mayor, and Lawrence J. Camisa, individually and as Director of Finance. The first count seeks: (a) to rescind a letter dated July 6, 1961 by Lawrence J. Camisa as Director of Finance, the substance and purpose of which was to terminate plaintiff's service, compensation and tenure in the office of City Collector; and (b) direction that plaintiff be permitted to continue in all respects as City Collector for the balance of his term (December 31, 1964). A second count seeks to set aside the said letter (July 6, 1961) as being illegal. A third count seeks a determination and adjudication of plaintiff's rights in the premises, namely, the office of City Collector. Otherwise stated, the defendants acted contrary to the provisions of R.S. 11:28-2 and N.J.S.A. 40:69A-207, referred to hereafter.
By answer filed defendants deny the legality of any right of plaintiff, and as well the validity of his appointment, to *223 the office of City Collector, and his right to perform the duties of such office. In the manner of separate defenses defendants aver: (1) no office of City Collector existed to entitle plaintiff to claim tenure; (2) the office of City Collector (if it existed) was abolished by N.J.S.A. 40:69A-207 and was not re-created; and (3) a reservation to advance other defenses before hearing. Defendants demand judgment in accordance with these defenses.
Now the parties on notice of motion and briefs respectively seek a summary judgment under R.R. 4:58-3. In adopting that rule it is necessary the moving parties singly show that palpably there is no genuine issue of a material fact, and by reason thereof there is the right of such party to have a judgment as a matter of law. No disputed factual circumstance appears in the record, as indicated by the stipulation filed herein. Therefore, the mutually acceded facts will guide the court in the application of controlling statutes and law.
In the light of the related issue (quo warranto) the plaintiff assumes the burden to establish the existence of the questioned office and the validity of his title thereto. Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952).
Commencing with the year 1851 the subject municipality functioned under various charter forms of government which continued until 1913 when the citizenry adopted the commission form of government (called Walsh Act hereafter), R.S. 40:70-1 et seq. This form of government was in effect continuously until the adoption of the supplemental optional municipal charter law designated as the Faulkner Act (Strong Mayor Plan C), N.J.S.A. 40:69A-1 et seq. This was accomplished in November 1960, and by successive proceedings resulted in the election of Thomas Gangemi as Mayor, whose authority extended to government affairs with relation to municipal finances, particularly the duty to collect taxes, including the authority to appoint Lawrence J. Camisa as Director of Finance.
*224 In addition, the municipality prior to the Walsh Act adopted the Civil Service Act, now N.J.S.A. 11:1-1 et seq. Upon the change of government the theretofore governing bodies were abolished and the tenure of all offices ceased and terminated, but protection was provided for classified civil service employees. With the adoption of the Walsh Act the then City Collector was an appointee of the Board of Finance and Taxation and a beneficiary of the aforementioned protection.
In a stipulation filed the parties agree that the difference between plaintiff's salary of $8,000 per annum, from January 22, 1960 to June 30, 1961, and $7,000, if he had been paid $7,000 a year, is $1,446.24. In addition, the parties through counsel stipulated in court that if plaintiff succeeds in this proceeding to the possession of the title of City Collector, the said sum of $1,446.24 would be refundable in satisfaction of the salary differential.
The disputed legal issues can be stated as involving substantially the following contra-contentions: (a) Did the office or position of City Collector exist at the inception of the Faulkner Act, and, if so, did plaintiff possess title thereto; (b) if plaintiff possessed said municipal employment, could his rights be terminated in the manner here attempted; or was such action barred by protection of term tenure under Civil Service; and (c) in the event plaintiff's appointment is valid, should he reimburse the municipality for income paid him in excess of lawful compensation?
Item (a) calls for consideration of the related history of the creation and continuance of the subject office. It is inescapable that the entity of City Collector was actually maintained and prevailed under due appointment subsequent, during and throughout the period when the local government functioned under the Walsh Act. Such act did not abolish the offices then existing, except where inconsistent with its provisions. The charter provision act of March 31, 1871, L. 1871, p. 1094, sec. 26, in effect at the adoption of *225 the Walsh Act, continued the office of City Collector, and said office was not inconsistent with the Walsh Act. See Mattia v. City of Newark, 119 N.J.L. 268 (Sup. Ct. 1938); Salter v. Burk, 83 N.J.L. 152 (Sup. Ct. 1912); Burke v. Kenny, 9 N.J. Super. 160 (App. Div. 1950).
In that posture, in the event plaintiff's appointment is valid, N.J.S.A. 40:69A-207 is the controlling provision under a Faulkner Act form of government, which renders protection to him within the following language: "* * * nothing in this section shall be construed to abolish the office or terminate the term of office * * * of any official or employee now protected by any tenure of office law." R.S. 11:28-2 provides tenure of office when there is a change in the form of government in a municipality. See Devlin v. Cooper, 124 N.J.L. 155 (Sup. Ct. 1940). And the office of City Collector is in the unclassified service as covered by such law, N.J.S.A. 11:22-2(o).
Accordingly, it is concluded under fact and law that the office or position of City Collector did prevail prior to the adoption of the Faulkner Act, and continued to prevail thereafter.
It is undisputed that plaintiff on August 7, 1956 was appointed to the unexpired term of his predecessor (who died July 18, 1956), which term ran to May 19, 1957. Moreover, in that situation the statute provided the term of such appointee "shall run for the unexpired term and until the qualification of a successor." (N.J.S.A. 40:46-6.1.) Thus, defendants' observation that plaintiff after May 19, 1957 should have had a "second appointment" to May 19, 1961, which would extend beyond the expiring term of the appointing authority (May 16, 1961), is without merit.
Item (b) must be considered in the light of what is urged by plaintiff as the basis of the authority for appointment, i.e., the letter dated January 21, 1960, by James F. Murray, the Director of Revenue and Finance, to the board of commissioners, *226 including the resolution ratifying and confirming said appointment by the governing body on July 19, 1960. As this situation stresses the foremost positions of the parties, the contents of the letter are fully set forth as follows:
"This is to advise that by virtue of the authority vested in me as Director of Revenue & Finance, I have this day appointed Francis X. Bierne Municipal Collector of Taxes of the City of Jersey City for a term in accordance with the statute and laws of New Jersey in such case made and provided, with all the powers and duties incident to said office, at an annual salary of $8,000. payable in equal semi-monthly installments, effective immediately."
The contents of the aforesaid resolution are in perfunctory form and need not be stated. However, it is significantly noticed that the salary on the date of January 21, 1960 was fixed and governed by ordinance of the municipality dated September 10, 1956, designated K 1554, in the following language:
"Section 1. That the annual compensation of the City Collector be and the same hereby is fixed at the sum of SEVEN THOUSAND DOLLARS ($7,000), to be paid in equal semi-monthly installments."
It is acknowledged that where compensation has been prescribed by ordinance, a municipal officer has no power to provide for a greater sum in an appointment. However, the distinction between invalidating the salary authorization as to the amount in excess of $7,000 and invalidating the entire appointment must be appreciated. In City of Camden v. Varney, 63 N.J.L. 325 (E. & A. 1899), the court required the officer to return the money received in excess of his lawful salary. In that case the payments were made on the order of the governing body. Nowhere in the decision does the court consider invalidating the appointment because of the illegal salary authorization.
The cases cited by defendants to support their contention that the appointment of the plaintiff was illegal, and that *227 he has no right to the office of City Collector, can be distinguished. In Jersey City v. Dept. of Civil Service, 10 N.J. Super. 140 (App. Div. 1950), the court held the appointment illegal since there was no salary ordinance whatsoever. The decision was affirmed by the Supreme Court in 7 N.J. 509 (1951), on the ground that the position was never legally created. In the case here there was a validly created position and the salary therefor was provided by ordinance, which situations were accordant with the holdings of both appellate tribunals.
In the case of Daly v. City of New Brunswick, 3 N.J. 397 (1950), the court held that a resolution of the board of commissioners does not satisfy the requirement that the power to appoint reside solely in the director of the applicable department, and therefore the plaintiff had not been validly appointed. Here, it is clear that the power of appointment was in Director Murray.
The phrase in the letter of appointment, "in accordance with the statute and laws of New Jersey in such case made and provided," evidences an intent that the appointment comply with the statute and laws, and in any event was to be controlled thereby. The statement of the court in Daly v. City of New Brunswick, supra, that the appointment was illegal in that it fixed his compensation in excess of the amount authorized by statute, is not therefore required to be followed in this case. Similarly, the proviso "effective immediately" does not nullify the appointment. The fact that this proviso is contra to N.J.S.A. 40:46-6.1, which states that the tax collector "shall hold his office for a period of four years from the first day of January next following his election or appointment," merely invalidates the proviso itself. This declaration, "effective immediately," and the erroneous salary designation, not being requirements in the appointing instrument, are held to be mere irregularities, immaterial to the legality of the appointment. To iterate, the letter of January 21, 1960 could in form and effect only *228 accomplish a term in compliance with N.J.S.A. 40:46-6.1, and grant compensation as provided by ordinance K 1554.
Research has not disclosed a decision by the courts of our State wherein an otherwise valid appointment has been held void because of an incorrect proviso. However, in Dodsworth v. Mayor of Medford, 308 Mass. 62, 30 N.E.2d 835 (1941), the Supreme Judicial Court considered this question and held an appointment valid notwithstanding the incorrect statement as to the term of office. In commenting on the proviso "subject to the rules of the Board and the ordinances provided" in the appointing instrument, the court said at page 837 (30 N.E.2d):
"The reference in the mayor's communication to the ordinance makes the case stronger than those cases in which nothing appeared to neutralize or to control the erroneous statement of the tenure of office to which a candidate was seeking election. In such instances it has been held that such an error did not vitiate the election, and we see nothing in the agreed facts that would lead to a different conclusion in reference to this appointment."
It is concluded that the letter of January 21, 1960, together with the existing statutes and ordinances, constituted in fact and law a valid appointment of the plaintiff to the position of City Collector of the City of Jersey City for the term provided by N.J.S.A. 40:46-6.1, and to continue to December 31, 1964 at a salary of $7,000 per annum provided by ordinance K 1554, adopted September 10, 1956.
As to item (c), the litigation sub judice includes the demand that the plaintiff return an overpayment of compensation in the amount of $1,446.24. This differential occurred in the period from January 22, 1960 to June 30, 1961, during which the plaintiff received compensation at the rate of $8,000 per annum. See, City of Camden v. Varney, supra, wherein the court, in referring to Demarest v. Inhabitants of New Barbadoes, 40 N.J.L. 604 (E. & A. 1878), said (at page 326 of 63 N.J.L.), "It was further *229 adjudged that unauthorized payments made by the Committee to the collector might be recovered as money wrongfully had and received."
Accordingly, it is concluded by fact and law that plaintiff refund to the City of Jersey City the amount of $1,446.24, the stipulated difference resulting from the salary paid in excess of $7,000 a year.
Counsel should present a form of judgment in conformity with these conclusions.