## In the Matter of the ESTATE of Lucille Margaret MAYORS.

### No. 66464.

Court of Chancery of Delaware, New Castle.

Submitted Nov. 30, 1977.

Decided Jan. 27, 1978.

Samuel H. Lewis, Wilmington, for Estate of Lucille Mayors.

Frank J. Gentile, Jr., Wilmington, for Estate of Steve C. Mayors.

HARTNETT, Vice Chancellor.

### I

This action results from the request of Steve C. Mayors for his surviving spouse's

---

allowance pursuant to 12 *Del.C.* § 2308.[1] Lucille Mayors died on July 16, 1975, and Steve C. Mayors, her estranged husband, filed the requisite written notice with the Executor and the Register of Wills on September 24, 1975, requesting his spouse's allowance. This request was "allowed" by letter of the Register of Wills dated October 3, 1975, although I find no requirement in the Delaware Code that a spouse's allowance must be "allowed" or approved by the Register of Wills. Four days after the "allowance" by the Register of Wills, the Estate of Lucille Mayors, on October 7, 1975, filed a Letter of Objection with the Register of Wills alleging that Steve C. Mayors was not entitled to a spouse's allowance because he and Lucille Mayors were separated at the time of her death. On October 18, 1976, Steve C. Mayors also died, before he had actually received the allowance.

The Estate of Steve C. Mayors takes the position that since the spouse's allowance is a debt of the Estate of Lucille Mayors, the allowance is an asset of the Estate of Steve C. Mayors, and therefore should be paid into his Estate.

The Estate of Lucille Mayors now takes the position that the allowance should not be paid to the Estate of Steve C. Mayors because: (1) Steve C. Mayors died before receiving the allowance; or (2) Mr. and Mrs. Mayors were separated at the time of death of Lucille Mayors; or (3) the Estate of Lucille Mayors is entitled to a set-off against the allowance because Lucille Mayors, prior to her death, incurred certain obligations which benefitted the real estate owned as tenants by the entireties by Mr. and Mrs. Mayors and which, on the death of Lucille Mayors, passed by operation of law to Steve C. Mayors. The procedure followed by the Estate of Lucille Mayors in bringing this matter before the Court is somewhat unusual but, as will be noted, this matter is capable of being disposed of on the merits without concern for the way in which it was brought.

## II

■ The threshold legal question raised is whether or not the surviving spouse's allowance becomes vested as an absolute right of the survivor once the demand for it is timely filed.

The language in 12 *Del.C.* § 2308 precludes any argument that the Register of Wills has discretion to refuse a demand for a surviving spouse's allowance which has been timely filed because it states:

(a) The surviving spouse of any decedent *shall* be entitled to receive and the executor or administrator *shall* pay to such spouse as soon as convenient . . . cash up to the amount of $2,000 out of the estate of the decedent . . .

(c) The allowance provided for in subsection (a) of this section *shall be considered to be a debt* of the estate . . . (emphasis added)

The word "shall" in a statute is usually mandatory. *Delaware Cit. for Cl. Air, Inc. v. Water & Air R. Com'n.,* Del.Super., 303 A.2d 666 (1973); *Schmidt v. Abbott,* 261

1. 12 *Del.C.* § 2308 states:

§ 2308. Surviving spouse's allowance.

(a) The surviving spouse of any decedent shall be entitled to receive and the executor or administrator shall pay to such spouse as soon as convenient, in the manner provided in this section, cash up to the amount of $2,000 out of the estate of the decedent, which payment shall be made in the order of preference of claims against the estate in § 2105 of this title, as amended. The foregoing provision shall not affect any other rights to which such spouse may be entitled, either under the will of the decedent or the intestacy laws of this State.

(b) The allowance to the surviving spouse of a decedent provided for in subsection (a) of this section shall be of no effect unless and until such spouse shall, within 6 months from the date of the granting of letters testamentary or of administration, notify in writing the register of wills of the county wherein the letters were granted and the executor or administrator of such spouse's demand that a specific sum not exceeding $2,000 be so set aside out of the proceeds of the estate of the decedent.

(c) The allowance provided for in subsection (a) of this section shall be considered to be a debt of the estate, and the executor or administrator may sell so much of the property of the decedent as will enable him to pay the allowance in the same manner as he may be enabled to do by law for the payment of other debts of the decedent or of the estate.

Iowa 886, 156 N.W.2d 649 (1968); *People v. Williams,* Cal.D.C.App., 145 P.2d 366 (1944); *Jersey City v. Dept. of Civil Service et al.,* Appl.Div., 10 N.J.Super. 140, 76 A.2d 830 (1950). This is consistent with 12 *Del.C.* § 2105 which provides the order of preference which such demand shall occupy in relation to other claims against the estate:

> (a) Executors and administrators after payment of all administration expenses, fees and commissions *shall pay* claims against the decedent in the following order: (1) *Surviving spouse's allowance* as provided in § 2308 of this title . . . (emphasis added)

Thereafter follow ten other types of claims which, according to the statute, are to be accorded a lower priority than the surviving spouse's allowance.

I therefore hold that the expenditures made by Lucille Mayors allegedly for the benefit of the real estate she held as tenants by the entireties with Steve C. Mayors, are of the type which should be accorded a lower priority than the spouse's allowance.

### III

█ The Executor of the Estate of Lucille Mayors makes much of the fact that Mr. and Mrs. Mayors had been estranged for some years prior to Mrs. Mayors' death. However, it is clear in Delaware that the fact that a party seeking his spouse's allowance was living apart from his wife at the time of her death is no bar to his right to the allowance. *Pike v. Satterthwaite,* Del. Super., 15 A.2d 430 (1940).

An examination of the language of the statute and the applicable case law clearly shows that the surviving spouse's allowance is an absolute right which must be allowed by the Register of Wills if timely notice of demand has been filed. Language from *In re Hearn's Estate,* Del.Orph.Ct., 195 A. 367 (1937) is particularly appropriate:

> The amount to which the widow is entitled is fixed and definite. Neither are there any conditions attached to it, nor is it necessary to have the reasonableness

thereof determined by the Register or any other agency. She can demand this sum . . . at any time after the executor or administrator is appointed; and there is nothing to prevent it being paid to her.

It is also clear that the right to receive the spouse's allowance vests in the survivor at the time of death of his or her spouse. As held in *Pike v. Satterthwaite,* supra:

> The right created is an absolute right. It vests in the widow on the death of her husband and becomes an asset of her estate if she should die before payment.

See also, *In re Hearn's Estate,* supra.

This disposes of this case. However, in deference to the arguments made by the Estate of Lucille Mayors, I will discuss the other arguments raised.

### IV

█ In 1941, after the holding in *Pike v. Satterthwaite,* supra, and *In re Hearn's Estate,* supra, the General Assembly by 43 *Del.L.* Ch. 211 enacted a general revision to the statute relating to widow's allowances. This revision, with several minor amendments not pertinent to this case, was codified in the Delaware Code of 1953 and the Delaware Code of 1974 as 12 *Del.C.* § 2307.[2]

The Estate of Lucille Mayors relied on the word "allowance" as contained in the 1941 revision and argues that its use therein implies that the Register of Wills is given discretion to determine whether a spouse's allowance is to be paid. I disagree. The first real widow's allowance statute was enacted in 1933 as 38 *Del.L.* Ch. 185 and stated:

> WIDOW'S ALLOWANCE: The widow of any decedent shall be entitled to receive and the executor or administrator shall pay to her, as soon as conveniently may be during the year of administration, cash up to the amount of $500.00 out of the estate of decedent, which payment shall take priority over all unsecured debts, expenses, legacies, taxes, and all other unsecured claims against the estate

---

2. On June 25, 1974, 12 *Del.C.* § 2307 was reenacted as 12 *Del.C.* § 2308, 59 *Del.L.* Ch. 384.

of the decedent. The foregoing provision shall not affect any other rights to which she may be entitled either under the will of her husband or the provisions of the intestacy laws of this State.

In the 1941 revision the General Assembly repealed the then existing widow's allowance statute and enacted by 43 *Del.L.* Ch. 211 a new statute to read:

3876. Sec. 78. WIDOWS ALLOW-ANCE:—The widow of any decedent *shall be entitled to receive* and the executor or administrator *shall pay* to her as soon as conveniently may be, in the manner hereinafter provided, cash up to the amount of Five hundred Dollars out of the estate of the decedent, which payment *shall take priority* over all unsecured debts with the exception of taxes, costs of administration, reasonable funeral expenses and reasonable expenses of medicine and medical attendance and for nursing and necessaries during the last illness of the decedent. The foregoing provision shall not affect any other rights to which she may be entitled, either under the will of her husband or the provisions of the intestacy laws of this State.

The *above allowance* to the widow of a decedent shall be of no effect unless and until the said widow shall, within six months from the date of the death of the decedent, notify in writing over her signature the Register of Wills of the County wherein the letters were granted and the executor or administrator of her demand that the sum of Five hundred Dollars aforesaid be set aside for her benefit out of the proceeds of the estate of the decedent.

The *above allowance* shall be considered *to be a debt* of the estate, and the executor or administrator shall have full power to sell so much of the property of the decedent as will enable him to pay *said allowance* in the same manner as he may be enabled to do by law for the payment of other debts of the decedent or of the estate.

Unsecured debts, as mentioned in the first paragraph hereof, shall mean those debts which are not protected or secured

by valid liens against the particular property out of which the *said allowance* is to be paid. (emphasis added)

The first paragraph was a reenactment of existing law. The other paragraphs were added.

It will therefore be seen that the sum the widow (now spouse) is entitled to receive as a priority claim was from its statutory inception called a "Widow's Allowance".

The word "allowance" as it appears in the second, third and fourth paragraphs of § 3876 (Sec. 78) Del.C. (1935) as enacted by 43 *Del.L.* Ch. 211 (now 12 *Del.C.* § 2308[b] and [c]) therefore is merely a description of the largesse the widow (or surviving spouse) is entitled to receive; it did not imply that the Register was being given any new discretion to approve or disapprove the allowance.

The word "allowance" may mean either the act of allowing or an assigned portion. *Black's Law Dictionary*

An examination of 38 *Del.L.* Ch. 185 shows that the General Assembly, when it first created a "Widow's Allowance" in 1933, used "allowance" as a noun to delineate the assigned portion of the estate set apart for the widow. The 1941 amendment (43 *Del.L.* Ch. 211) again used the words "Widow's Allowance" in the same manner.

The statute is clear and unambiguous on its face and there is therefore no room for judicial interpretation. *Sutherland Statutory Construction* (4th Ed.) § 45.02. See *Council 81, Am. F. of S., C. & M. Emp. v. State, Dept. of Fin.*, Del.Supr., 293 A.2d 567 (1972). The initial use of the words "Widow's Allowance" in the statute clearly means "the assigned portion". It does not mean "the act of allowing". The subsequent use of the words "the above allowance" or "said allowance" in the statute is consistent with the use of "allowance" to mean the "assigned portion".

There is no indication that the General Assembly ever meant "shall" to mean "may" or "allowance" to mean "the act of allowing".

The widow's allowance (now termed spouse's allowance) is therefore a debt against a decedent's estate which is automatically set aside for the decedent's spouse if the spouse files a written demand for it within six months of the granting of letters testamentary or Letters of Administration.

There is no provision for any set-off against the allowance nor is there any discretion vested in the Register of Wills to approve or disapprove the demand if the spouse shows that the marriage legally existed at the time of decedent's death and if demand for the allowance is made within the six-month period allowed by the statute.

The Estate of Lucille Mayors is therefore directed to pay the Estate of Steve C. Mayors the sum of $2,000 forthwith.

So ordered.